**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES, INC., *2953 Bunker Hill Lane, Suite 206, Santa Clara, California 95054,* <br><br> and <br><br> YANGTZE MEMORY TECHNOLOGIES CO., LTD., *No. 88 Weilai 3rd Road, East Lake High-tech Development Zone, Wuhan, Hubei, 430205 China,* <br><br>         Plaintiffs, <br><br> v. <br><br> MICRON TECHNOLOGY, INC. *8000 South Federal Way, Boise, Idaho 83716,* <br><br> and <br><br> DCI GROUP AZ, L.L.C., *2000 K Street NW, Washington, D.C. 20006,* <br><br>         Defendants. | No. 25-cv-1795-CJN |

**DEFENDANT DCI GROUP AZ, L.L.C.'S
MOTION TO DISMISS COMPLAINT AND JOINDER IN THE
<u>MOTION TO DISMISS FILED BY DEFENDANT MICRON TECHNOLOGY, INC.</u>**

Defendant DCI Group AZ, L.L.C. ("DCI"), through counsel, hereby moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). The grounds for the motion are explained in the accompanying memorandum in support of this motion. DCI also joins in the motion to dismiss filed by Micron Technology, Inc. A proposed order is also submitted herewith.

August 11, 2025                         Respectfully submitted,


                                        */s/ Dale Giali*
                                        Dale Giali (D.C. Bar #436514)
                                        *dgiali@kslaw.com*
                                        Lena T. Colin (*pro hac vice forthcoming*)
                                        *lcolin@kslaw.com*
                                        KING & SPALDING LLP
                                        633 West Fifth Street, Suite 1600
                                        Los Angeles, California 90071
                                        Telephone: (213) 443-4355
                                        Facsimile: (213) 443-4310

                                        Michael L. Resch (D.C. Bar #481402)
                                        (*Admission forthcoming*)
                                        *mresch@kslaw.com*
                                        KING & SPALDING LLP
                                        50 California Street, Suite 3300
                                        San Francisco, California 94111
                                        Telephone: (415) 318-1200
                                        Facsimile: (415) 318-1300


                                        Attorneys for Defendant
                                        DCI Group AZ, L.L.C.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES, INC., *2953 Bunker Hill Lane, Suite 206, Santa Clara, California 95054,*<br><br>and<br><br>YANGTZE MEMORY TECHNOLOGIES CO., LTD., *No. 88 Weilai 3rd Road, East Lake High-tech Development Zone, Wuhan, Hubei, 430205 China,*<br><br>                Plaintiffs,<br><br>v.<br><br>MICRON TECHNOLOGY, INC. *8000 South Federal Way, Boise, Idaho 83716,*<br><br>and<br><br>DCI GROUP AZ, L.L.C., *2000 K Street NW, Washington, D.C. 20006,*<br><br>                Defendants. | No. 25-cv-1795-CJN |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## <u>DCI GROUP AZ, L.L.C.'S MOTION TO DISMISS COMPLAINT</u>

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY............................................2

      A.    YMTC's Claims ..............................................................................................3

      B.    Relevant Procedural History ...........................................................................5

III.  LEGAL STANDARDS ...........................................................................................6

IV.   ARGUMENT .......................................................................................................7

      A.    This Action Should Be Dismissed for Lack of Article III Standing........................7

      B.    This Action Should Be Dismissed for Failure to Plead Statutory Standing Under
            the Lanham Act...........................................................................................11

      C.    This Action Should Be Dismissed for Failure to Plausibly Plead the Elements of a
            Lanham Act Claim........................................................................................15

            1.    The CTT Publications Are Not "Commercial Advertising or Promotion"
                  and Are Thus Not Actionable Under the Lanham Act. ............................15

            2.    The Specified Statements Fail to Meet the Standards for False Advertising
                  and Are Thus Not Actionable Under the Lanham Act. ............................22

      D.    The Theory of Contributory Liability Should Be Rejected. ..................................24

V.    REQUEST FOR JUDICIAL NOTICE ...........................................................................26

VI.   CONCLUSION.....................................................................................................27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acad. of Drs. of Audiology v. Int'l Hearing Soc'y*,
  237 F. Supp. 3d 644 (E.D. Mich. 2017)............................................................................24

*Alfasigma USA, Inc. v. First Databank, Inc.*,
  525 F. Supp. 3d 1088 (N.D. Cal. 2021) .....................................................................21, 22

*Animal Legal Def. Fund v. Vilsack*,
  640 F. Supp. 3d 134 (D.D.C. 2022) ............................................................................7, 8

*Animal Legal Def. Fund v. Vilsack*,
  111 F.4th 1219 (D.C. Cir. 2024) ................................................................................7, 8

*Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1*,
  296 F. Supp. 3d 92 (D.D.C. 2017) ............................................................................7, 10

*Ariix v. Nutrisearch Corp.*,
  985 F.3d 1107 (9th Cir. 2021) ......................................................................................22

*Barrett v. Atl. Monthly Grp. LLC*,
  2024 WL 4119400 (D.D.C. Sept. 9, 2024) ...................................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................7, 10

*Bilinski v. Keith Haring Found., Inc.*,
  96 F. Supp. 3d 35 (S.D.N.Y.) ........................................................................................18

*Bilinski v. Keith Haring Found., Inc.*,
  632 F. App'x 637 (2d Cir. 2015) ...................................................................................18

*Bluegreen Vacations Unlimited, Inc. v. Timeshare Laws. P.A.*,
  2023 WL 3198192 (S.D. Fla. May 2, 2023) ..................................................................25

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
  447 U.S. 557 (1980)......................................................................................................17

*Children's Health Def. v. Meta Platforms, Inc.*,
  112 F.4th 742 (9th Cir. 2024) .......................................................................................22

*Cisco Sys., Inc. v. Dexon Comput., Inc.*,
  2022 WL 797015 (N.D. Cal. Mar. 16, 2022).................................................................13

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) ........................................................................16, 23

*Ctr. for Democracy & Tech. v. Trump*,
507 F. Supp. 3d 213 (D.D.C. 2020) ........................................................................7

*Diamond Resorts Int'l, Inc. v. Reed Hein & Assocs., LLC*,
2019 WL 6310717 (D. Nev. Nov. 25, 2019) ........................................................26

*DNA Sports Performance Lab, Inc. v. Major League Baseball*,
2020 WL 4430793 (N.D. Cal. Aug. 1, 2020) ........................................................25

*Duty Free Ams., Inc. v. Estée Lauder Cos.*,
797 F.3d 1248 (11th Cir. 2015) ...........................................................................25

*Edward Lewis Tobinick, MD v. Novella*,
848 F.3d 935 (11th Cir. 2017) .......................................................................20, 22

*Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*,
548 F.3d 1184 (9th Cir. 2008) ...............................................................................8

*Exeltis USA Inc. v. First Databank, Inc.*,
520 F. Supp. 3d 1225 (N.D. Cal. 2021) ...............................................................21

*Farah v. Esquire Mag., Inc.*,
863 F. Supp. 2d 29 (D.D.C. 2012) .......................................................................22

*Farah v. Esquire Mag., Inc.*,
736 F.3d 528 (D.C. Cir. 2013) .......................................................................15, 22

*Ford v. NYLCare Health Plans of Gulf Coast, Inc.*,
301 F.3d 329 (5th Cir. 2002) .......................................................................8, 9, 10

*Geomatrix LLC v. NSF International*
629 F. Supp. 3d 691 (E.D. Mich. 2022).........................................................12, 13

*Geomatrix LLC v. NSF International*
82 F.4th 466 (6th Cir. 2023) ................................................................................12

*Gillette Co. v. Wilkinson Sword, Inc.*,
795 F. Supp. 662 (S.D.N.Y. 1992), .....................................................................26

*Gillette Co. v. Wilkinson Sword, Inc.*,
1992 WL 12000396 (S.D.N.Y. Oct. 28, 1992).....................................................26

*Gmurzynska v. Hutton*,
355 F.3d 206 (2d Cir. 2004).................................................................................20

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*,
  859 F. Supp. 1521 (S.D.N.Y.1994)......................................................16, 17, 21

*Healthcare Integrity, LLC v. Rehobeth McKinley Christian Health Care Servs., Inc.*,
  2022 WL 2802564 (D.N.M. July 18, 2022)........................................................24

*HomeLight, Inc. v. Shkipin*,
  694 F. Supp. 3d 1242 (N.D. Cal. 2023) .............................................................13

*\*Huntingdon Life Scis., Inc. v. Rokke*,
  978 F. Supp. 662 (E.D. Va. 1997) .............................................................16, 18

*Joint Stock Soc'y v. UDV N. Am., Inc.*,
  266 F.3d 164 (3d Cir. 2001).................................................................................9

*Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*,
  909 F.3d 446 (D.C. Cir. 2018) ..........................................................................26

*\*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014).........................................................................................11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)...........................................................................................7

*\*Maffick LLC v. Facebook, Inc.*,
  2021 WL 1893074 (N.D. Cal. May 11, 2021) ...........................................13, 14, 15

*\*Neurotron, Inc. v. Am. Ass'n of Electrodiagnostic Med.*,
  189 F. Supp. 2d 271 (D. Md. 2001)..............................................15, 17, 19

*Neurotron, Inc. v. Am. Ass'n of Electrodiagnostic Med.*,
  48 F. App'x 42 (4th Cir. 2002) ..........................................................................15

*Nichols v. Club for Growth Action*,
  235 F. Supp. 3d 289 (D.D.C. 2017)...................................................................22

*Oxycal Lab'ys, Inc. v. Jeffers*,
  909 F. Supp. 719 (S.D. Cal. 1995).....................................................................19

*\*Peak Health Ctr. v. Dorfman*,
  2019 WL 5893188 (N.D. Cal. Nov. 12, 2019) ....................................................21

*Purple Innovations, LLC v. Honest Reviews, LLC*,
  2017 WL 3172810 (D. Utah July 25, 2017) .......................................................24

*Riley v. Nat'l Fed'n of the Blind*,
  487 U.S. 781 (1988).........................................................................................19

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)...................................................................................................7

*\*Stahl L. Firm v. Judicate W.*,
    2013 WL 4873065 (N.D. Cal. Sept. 12, 2013) .................................................8, 9

*Strauss v. Angie's List, Inc.*,
    951 F.3d 1263 (10th Cir. 2020) ...............................................................................20

*Telebrands Corp. v. My Pillow, Inc.*,
    2019 WL 1923410 (N.D. Ill. Apr. 30, 2019) ..........................................................24

*The Monotype Corp. v. Simon & Schuster Inc.*,
    2000 WL 1852907 (N.D. Ill. Sept. 8, 2000) ...........................................................19

*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011) .....................................................................................8

*United States v. Philip Morris USA Inc.*,
    566 F.3d 1095 (D.C. Cir. 2009) ........................................................................16, 17

*\*United States ex rel. Univ. Loft Co. v. Avteq, Inc.*,
    2015 WL 13548950 (W.D. Tex. Dec. 22, 2015) ..........................................11, 14, 15

*United States ex rel. Univ. Loft Co. v. Avteq, Inc.*,
    2016 WL 9461763 (W.D. Tex. Jan. 8, 2016) ...........................................................11

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ...................................................................................26

*Warth v. Seldin*,
    422 U.S. 490 (1975).....................................................................................................8

*\*Wexler v. Dorsey & Whitney, LLP*,
    2019 WL 5485265 (E.D.N.Y. Oct. 25, 2019)..........................................................23

*Wexler v. Dorsey & Whitney, LLP*,
    815 F. App'x 618 (2d Cir. 2020) ..............................................................................23

*Young Hollywood LLC v. White Ops, Inc.*,
    2020 WL 6162795 (C.D. Cal. Aug. 6, 2020).............................................................16

**Statutes**

Lanham Act, 15 U.S.C. § 1125(a) ............................................................ *passim*

**Other Authorities**

87 Fed. Reg. 77,505 (Dec. 19, 2022) ............................................................5, 26

Fed. R. Civ. P. 9(b) ..................................................................................1, 27

Fed. R. Civ. P. 12(b)(1) ............................................................................1, 27

Fed. R. Civ. P. 12(b)(6) ............................................................................1, 27

**References**

4 McCarthy on Trademarks and Unfair Competition § 27:71 (5th ed.) ............................15

## INDEX OF EXHIBITS

1.    Department of Commerce, Additions and Revisions to the Entity List and Conforming Removal From the Unverified List, 87 Fed. Reg. 77,505 (Dec. 19, 2022).

2.    The White House, "Building Resilient Supply Chains, Revitalizing American Manufacturing, and Fostering Broad-Based Growth," June 2021 (excerpts).

3.    Department of Defense, Entities Identified as Chinese Military Companies Operating in the United States (Jan. 31, 2024).

## I.    <u>INTRODUCTION</u>

Defendant DCI Group AZ, L.L.C. ("DCI") is a public affairs company whose primary purpose is to advocate for and raise public awareness of policy issues relevant to its clients. Of particular importance here, DCI is *not* a semiconductor manufacturer, does not advertise any products, and does not compete with Plaintiffs in any way. Soon after their nearly identical lawsuit against DCI was dismissed for lack of personal jurisdiction, Plaintiffs filed this case and added Micron Technology, Inc. ("Micron") as a defendant. At its core, however, nothing has changed: this case remains a misguided effort by a Chinese government-controlled semiconductor manufacturer (along with its subsidiary (together, "YMTC")) to utilize the U.S. courts to intimidate and silence its critics.[1] It should be dismissed on the grounds argued in the motion to dismiss filed by Micron (the "Micron MTD"), which DCI joins, as well as the grounds set forth below.

The Complaint alleges Lanham Act false advertising claims based on five statements that appeared in two publications from the China Tech Threat ("CTT") website. But YMTC's claims fail to meet the Lanham Act's threshold requirements: *competitive* injury stemming directly from *commercial* speech. The two challenged publications are (1) a 2021 blog post summarizing recent news (the "2021 Blog Post"), and (2) a long-form investigative report (the "2022 Report"), both of which address a political audience and advocate for political action. By any measure, neither is a commercial advertisement. What's more, the five statements, especially viewed in context, are either hypotheticals, opinions, or otherwise ambiguous suggestions—*not* actionable false statements. A finding of Lanham Act liability under these circumstances risks

1

opening the floodgates for businesses to challenge public advocacy simply because certain policies might not benefit them.

YMTC also ignores the fact that the very statements challenged in this litigation were published in other sources, including by the United States government, which placed YMTC on its list of Chinese military companies and a sanctions list. The Complaint also fails to mention letters from lawmakers referenced as source material in the 2022 Report, including one to a technology company CEO urging the company not to do business with YMTC. *See, e.g.*, Dkt. 1 (Compl.), Ex. 4, at 8. All of this, in turn, means that the Complaint fails to make plausible allegations that YMTC's alleged harms are directly attributable to *DCI* rather than *other sources*.

YMTC fails to show why DCI—which does not market or advertise any products, let alone compete with YMTC—should be found liable under a statute meant to protect against unfair competition between competitors with respect to *commercial* speech that causes *competitive* injury. Ultimately, the Complaint should be dismissed for three independent reasons: (1) YMTC lacks Article III standing; (2) YMTC fails to allege statutory standing under the Lanham Act; and (3) YMTC fails to plausibly allege the elements of a Lanham Act claim because the publications at issue are *not* "commercial advertising or promotion(s)" and because none of the statements identified in the FAC are false or misleading material statements about Plaintiffs or their products.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs are a Chinese semiconductor manufacturer and its California subsidiary. Compl. ¶¶ 21-22. Plaintiffs are "developers and manufacturers of 3D NAND flash memories."

---

[1] Plaintiff Yangtze Memory Technologies Company, Ltd. (YMTCL) is the Chinese entity. Plaintiff Yangtze Memory Technologies, Inc. (YMTI) is its wholly owned California subsidiary.

*Id.* ¶ 2. By contrast, DCI is a public affairs firm. DCI's purpose is to facilitate policymakers becoming aware of issues relevant to its clients. DCI does not seek attribution for its advocacy and does not have a financial stake in its clients or their products, and the Complaint does not allege otherwise.

One of the issues that is relevant to DCI's clients is the ongoing tension between American and Chinese business and policy interests, particularly in the technology sector. Against this backdrop, DCI began working with the China Tech Threat website to help foster awareness of issues involving the Chinese government relevant to American policy, specifically in the technology sector. YMTC disparagingly refers to this clear exercise of core First Amendment rights as an "astroturfing operation" that was "managed by DCI" in which DCI "secretly created, authored, and supplied content for CTT on Micron's behalf and under Micron's direction." Compl. ¶¶ 37, 60.[2]

### A.    YMTC's Claims

Although YMTC accuses DCI of managing a "scheme to disseminate false and misleading information about YMTC across multiple channels," Compl. ¶ 60,[3] the Complaint solely focuses on only two publications from the China Tech Threat website: (1) a long-form, sixteen-page, investigative report that appeared on the China Tech Threat website called "Silicon Sellout" (the "2022 Report"), and (2) a January 4, 2021, blog post that appeared on the China Tech Threat website (the "2021 Blog Post") (together, the "CTT Publications"). Compl. ¶¶ 12, 13. The Complaint includes two materially overlapping claims under the Lanham Act, alleging direct and contributory false advertising, product disparagement, and unfair competition based

---

Complaint, Dkt. 1, ¶¶ 21-22.

[2] The Complaint contains two different paragraphs numbered 60 (see Compl. pp. 12, 19). The citation here refers to ¶ 60 at page 12.

on five statements from the CTT Publications. Compl. pp. 20-28. The five challenged statements, some of which are combinations of separate sentences, are:

- "YMTC is *associated with* criminal activity, including a Social Security spoofing scam, identity theft, and cyber extortion." Compl. ¶ 80(a) (emphasis added).

- "YMTC chips equipped with spyware and installed on Apple devices *could* funnel collected data back to Beijing." Compl. ¶ 80(b) (emphasis added)

- "YMTC chips … *present the possibility* that malicious technology … from the Chinese military *could* be introduced to Apple end-users." Compl. ¶ 80(c) (emphasis added);

- "YMTC chips *could* be … intentionally compromised with rogue features … These built-in and concealed vulnerabilities would not be detected during manufacturing. They *could* be exploited … to disrupt performance or exfiltrate data." Compl. ¶ 80(d) (emphasis added); and

- "Electronics *with embedded chips* are enabled with a 'kill switch' … Such features, under Chinese military production, *could* be enabled … to shut down remotely by an unauthorized Chinese government actor." Compl. ¶ 80(e) (emphasis added).

The content of the CTT Publications reflected news and information widely available elsewhere, much of which served as source material. These sources include the United States government, which (i) has long monitored and published information about YMTC's role in the Chinese government's project to control the semiconductor industry as part of its objective to fuse military and civil functions, and (ii) has also placed YMTC on a sanctions list for risk of "activities contrary to the national security and foreign policy interests of the United States." *See,*

---

[3] This citation refers to ¶ 60 at page 12.

*e.g.*, Department of Commerce, Additions and Revisions to the Entity List and Conforming Removal From the Unverified List, 87 Fed. Reg. 77505, 77506 (Dec. 19, 2022) (**Ex. 1**) (placing YMTC on a sanctions list because it "pose[s] a significant risk of being … involved in activities contrary to the national security and foreign policy interests of the United States"); *see also* The White House, "Building Resilient Supply Chains, Revitalizing American Manufacturing, and Fostering Broad-Based Growth," June 2021 (**Ex. 2**) at 60-63 (describing that project and recognizing the emergence of YMTC as "China's national champion memory chip producer," attributed to billions of dollars from Chinese government sources, as among "the most mature of all [China's] efforts across the semiconductor spectrum"); Department of Defense, Entities Identified as Chinese Military Companies Operating in the United States, (Jan. 31, 2024) (**Ex. 3**) (designating YMTC as a "Chinese military company").

And, as cited in the CTT Report, several members of Congress have on numerous occasions publicly expressed their concerns about the threat YMTC poses to such things as U.S. national security. *See, e.g.*, Letter from Representative Michael McCaul and Senator Bill Hagerty to Secretary of Commerce (cited in 2022 Report, Dkt. 1, Ex. 4, at 8); Letter from Senator Marco Rubio to Apple CEO Tim Cook (cited in 2022 Report, *id.*). The CTT Publications were thus one (minor) voice reflecting a choir that included many influential voices echoing the same message.

### B.    Relevant Procedural History

This is not the first time YMTC has brought these Lanham Act claims against DCI. On June 7, 2024, YMTC sued two other noncompetitors from Denmark, Strand Consult and Dr. Roslyn Layton, in the Northern District of California for trade libel and unlawful business practice, alleging that those two parties were responsible for the alleged false and defamatory portions of the CTT Publications. *See Yangtze Memory Technologies Co., Ltd. et al. v. Strand*

*Consult et al.*, No. 5:24-CV-03454, Dkt. 1 (N.D. Cal. June 7, 2024) ("N.D. Cal. Action"); *see also* Compl. ¶ 10. Strand and Layton moved to stay discovery pending their filing of a joint motion to dismiss and motion under California's anti-SLAPP law, which prohibits vexatious litigation designed to chill constitutionally protected speech. N.D. Cal. Action, Dkt. 39. In their motion to stay discovery, Strand and Layton also raised concerns about YMTC's basis for subject-matter jurisdiction given that Strand and Layton were both Danish citizens and YMTC is a Chinese entity. *Id.* Before they could file their anti-SLAPP motion, however, YMTC filed an amended complaint, replacing all of YMTC's state law defamation claims with a cause of action under the Lanham Act, thereby evading California's anti-SLAPP laws. N.D. Cal. Action*, Dkt. 50. The amended complaint also added DCI as a defendant. Defendants moved to dismiss the amended complaint based on lack of subject matter jurisdiction and a failure to state a claim, as well as for lack of personal jurisdiction as to DCI. N.D. Cal. Action, Dkt. 65. On May 20, 2025, the Court dismissed DCI with prejudice from the N.D. Cal. Action due to lack of personal jurisdiction without reaching the other grounds for dismissal in the motion to dismiss. N.D. Cal. Action, Dkt. 81.

Shortly after the dismissal of DCI from the N.D. Cal. Action, YMTC filed this action. The Complaint here is substantially similar to the operative complaint in the N.D. Cal. Action, differing only in its addition of Defendant Micron. Otherwise, as in the N.D. Cal. Action, the Complaint solely alleges Lanham Act false advertising claims based on the same five statements contained within the CTT Publications.

## III.   <u>LEGAL STANDARDS</u>

Dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) is required if a plaintiff has not established Article III standing. *Ctr. for Democracy & Tech. v. Trump*, 507 F.

Supp. 3d 213, 218 (D.D.C. 2020) ("If a court determines that it lacks jurisdiction for any claim, it must dismiss that claim."). A "court presumes it lacks jurisdiction 'unless the contrary appears affirmatively from the record.'" *Animal Legal Def. Fund v. Vilsack*, 640 F. Supp. 3d 134, 144 (D.D.C. 2022) (citation omitted) (Nichols, J.), *aff'd*, 111 F.4th 1219, 1225 (D.C. Cir. 2024).

A complaint is properly dismissed under Rule 12(b)(6) for failure to state a claim if it fails to plead "enough facts to state a claim to relief that is plausible"—not merely "conceivable"—"on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must assume the truth of well-pleaded allegations and draw reasonable inferences in favor of the plaintiff, but "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1*, 296 F. Supp. 3d 92, 95 (D.D.C. 2017).

## IV.    ARGUMENT

### A.    This Action Should Be Dismissed for Lack of Article III Standing.

Dismissal is required where a plaintiff fails to meet the requirements for Article III standing. *Ctr. for Democracy & Tech*, 507 F. Supp. 3d at 218. To plead Article III standing, a plaintiff must demonstrate (1) an "injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish "injury in fact," a "plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Where, as here, Article III standing has not been established, a court need not delve into the merits of the case. *See, e.g.*, *Animal Legal Def.*

*Fund,* 640 F. Supp. 3d at 151 (stating that "the Court need not address" the argument that the Complaint failed to state claim where it granted motion to dismiss for lack of standing); *see also Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo,* 548 F.3d 1184, 1189 n.10 (9th Cir. 2008) ("The jurisdictional question of standing precedes, and does not require, analysis of the merits" (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

The two overlapping claims asserted in the Complaint are alleged Lanham Act violations (direct and contributory) based on false advertising, product disparagement, and unfair competition. A plaintiff establishes Article III injury for Lanham Act false advertising by showing that "some consumers who bought the defendant's product under a mistaken belief fostered by the defendant would have otherwise bought the plaintiff's product." *Stahl L. Firm v. Judicate W.*, 2013 WL 4873065, at *2 (N.D. Cal. Sept. 12, 2013) (quoting *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011). In other words, Article III standing under the Lanham Act requires that a plaintiff adequately plead *competitive* injury. Significantly, Article III standing under the Lanham Act requires a showing that the alleged competitive harm was "fairly traceable" to the allegedly deceptive statements from the defendant. *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 333 (5th Cir. 2002) (affirming grant of summary judgment for failure to establish Article III standing for Lanham Act claims).

Here, YMTC lacks Article III standing for at least two independent reasons.

***First***, YMTC fails to adequately plead *competitive* injury. DCI and YMTC are not competitors at all, let alone direct competitors, as Plaintiffs' theory readily acknowledges. *See, e.g.*, Compl. ¶¶ 2, 16, 18, 23. Plaintiffs are "developers and manufacturers of 3D NAND flash memories." *Id.* ¶ 2. DCI Group is a public affairs company, not a semiconductor manufacturer, and does not make or sell flash memories or otherwise compete with YMTC. *Id.* ¶¶ 16, 18, 23.

So, YMTC has not claimed and cannot claim that customers purchased (non-existent) DCI chips over YMTC chips. The Complaint is understandably devoid of any allegations that DCI "actually competes" with YMTC or that YMTC "competes or intends to compete with Defendants for the same pool of customers." *Stahl L. Firm*, 2013 WL 4873065, at *3. Because Article III injury for a false advertising claim requires at least "*some* factual allegations in the pleading to support at least the inference of competition"—and none exists here as to DCI—dismissal is warranted. *Id.* at *3, *6 (dismissing amended complaint for lack of standing under the Lanham Act where the plaintiff "failed to allege or otherwise indicate that he competes with Defendants" and "therefore failed to establish that he has suffered or will suffer an Article III injury in fact as a competitor").

**Second**, YMTC fails to plausibly establish that any alleged competitive harm was "fairly traceable" to DCI's actions. *Ford*, 301 F.3d at 333; *see also Joint Stock Soc'y v. UDV N. Am., Inc.,* 266 F.3d 164, 178 (3d Cir. 2001) (no Lanham Act standing where it was apparent that "plaintiffs' putative injuries" were not "fairly traceable to the challenged action of the defendants, but [were] rather the result of an independent cause") (citation modified). A plaintiff must plausibly allege "a chain of inferences that show how Defendants' actions could injure Plaintiff's business." *Stahl L. Firm*, 2013 WL 6200245, at *4. YMTC fails to meet this standard. YMTC states in the most generic and conclusory fashion that "Defendants' conduct was a substantial factor in causing" its alleged harms because "[c]onsumers and businesses, particularly in the technology sector, are sensitive to national security concerns and the potential for data breaches and cyberattacks" but does not provide any further explanation or otherwise connect the dots with factual allegations. Compl. ¶¶ 70-71. These vague and conclusory allegations are not sufficient to state a claim. *Twombly*, 550 U.S. at 570; *Anthony*, 296 F. Supp. 3d at 95.

9

The Complaint vaguely gestures to generalized harm to a broad range of potential and largely undefined customers, from OEMs to end-users. None of that amounts to the "concrete" or "particularized" injury necessary for Article III standing. The Complaint discusses only one specific customer, "OEM Customer #1," who YMTC claims was "considering" YMTC's 3D NAND flash memory chips until "Defendants intensified their disinformation campaign." Compl. ¶ 61. Even this allegation is plainly insufficient to establish the causal connection required to establish Article III standing. Among other things, the statements making up the alleged disinformation campaign allegedly impacting OEM Customer #1's decision-making— including statements regarding YMTC's relationship with the Chinese government (and the related potential security issues)—appeared in several other more prominent publications that are completely unaffiliated with DCI. For example, the White House published a paper that describes YMTC as "China's national champion memory chip producer." Ex. 1 at 62. And the Department of Commerce placed YMTC on a sanctions list based on a determination that it "pose[s] a significant risk of becoming involved in activities contrary to the national security and foreign policy interests of the United States." Ex. 2 at 77506. Even an article attached to the Complaint indicates that YMTC's loss of a potential deal with Apple was attributable to political pressure from Senator Marco Rubio, *not* the CTT Publications. Compl. Ex. 2 at 5.

Against this backdrop, YMTC's effort to blame the CTT Publications is both misplaced and implausible, and, therefore, YMTC has not adequately pled that the harm it alleges is "fairly traceable" to DCI instead of any other source. *See Ford*, 301 F.3d at 333 (no Article III standing under the Lanham Act where plaintiff could not establish injury or lost business that he would not have experienced "in the absence of the advertisements"); *United States ex rel. Univ. Loft Co. v. Avteq, Inc.*, 2015 WL 13548950, at *9 (W.D. Tex. Dec. 22, 2015) (no Article III standing

where Complaint contained "no allegation that defendants' [allegedly false statements] were ever an applicable factor in a[n] … unrestricted bid contest in which plaintiff and defendant(s) were direct competitors"), *report and recommendation adopted*, 2016 WL 9461763 (W.D. Tex. Jan. 8, 2016).

There is plainly no independent impact on YMTC's customers from either the 2021 Blog Post or 2022 Report sufficient to establish Article III standing—and YMTC does not plausibly allege otherwise.

**B.     This Action Should Be Dismissed for Failure to Plead Statutory Standing Under the Lanham Act.**

In addition to failing to plead Article III standing, YMTC also lacks statutory standing to bring a false advertising claim under the Lanham Act, which requires that a plaintiff's injuries "fall within the zone of interests protected by the Lanham Act" and are "proximately caused by violations of the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014). This requires showing "economic or reputational injury flowing *directly* from the deception wrought by the defendant's advertising …. [T]hat occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133 (emphasis added).

For at least two reasons, YMTC fails to establish a direct connection between the challenged statements and any of its alleged injuries.

***First***, the Complaint fails to plead that any alleged reputational harm was proximately caused by DCI or directly benefited DCI. *Lexmark Int'l, Inc.*, 572 U.S. at 133 ("the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct"). YMTC has failed to show injury flowing *directly* from the CTT Publications rather than other sources. This lack of causal connection is particularly relevant to DCI because (1) YMTC has not plausibly alleged that the China Tech Threat website (or DCI) was a source

11

regularly relied upon by its customers when making purchasing decisions, and (2) YMTC has not plausibly alleged that its alleged injuries resulted in a "1:1" benefit to DCI.

The facts here are analogous to *Geomatrix LLC v. NSF International*, in which a manufacturer of wastewater treatment products (Geomat) accused another of conspiring to disparage its products in order to influence state regulators and ultimately prevent Geomat from selling its products in various states. 629 F. Supp. 3d 691, 697-99 (E.D. Mich. 2022), *aff'd*, 82 F.4th 466, 473-75 (6th Cir. 2023). Geomat's core theory was that the alleged "coordinated negative campaign" caused state regulators to view Geomat's "products with suspicion" thereby "withhold[ing] approval." 629 F. Supp. 3d at 709. The Court rejected that argument, dismissing the complaint for lack of Lanham Act standing, and finding that it was "impossible to trace a straight line" from the "alleged conspiracy to disparage Geomat … to Plaintiff's inability to sell its Geomat products in various states," especially when state regulators could have made their decisions based on their own "independent decision" or a "combination of factors." *Id.* at 709-10. Where the alleged competitive harm was "driven by a unique combination of internal and external variables," it was "impossible to determine if the cause is attributable to defendants." *Id.* at 710.

As discussed above and in the Micron MTD, there were a number of other, more prominent sources that were unrelated to DCI or the China Tech Threat website and that discussed the risks associated with YMTC's relationship with the Chinese government. Moreover, there are many reasons why a sophisticated OEM might choose one chip manufacturer over another, or why an end-consumer might choose one device over another, that are completely unrelated to the risks discussed in the CTT Publications. The Complaint fails to make plausible allegations that any of the alleged harms to YMTC would not have occurred *but*

*for* the CTT Publications. *See, e.g., Geomatrix, LLC,* 629 F. Supp. 3d 691; *see also, e.g.,* *HomeLight, Inc. v. Shkipin*, 694 F. Supp. 3d 1242, 1255 (N.D. Cal. 2023) (dismissing Lanham Act claim where connection between challenged statements and alleged harm was "too attenuated to establish proximate cause," especially where there was "[an]other plausible explanation" for why the alleged harm may have occurred); *Cisco Sys., Inc. v. Dexon Comput., Inc.*, 2022 WL 797015, at *5 (N.D. Cal. Mar. 16, 2022) (allegedly false statement not plausibly material to purchaser behavior where there were other key facts that more likely influenced purchasing decisions, and plaintiff "would have suffered the same injury" despite allegedly deceptive advertisement).

The Complaint is replete with conclusory allegations that fail to meet the requisite specificity to establish injury under the Lanham Act. For example, YMTC makes a generalized claim about how the challenged statements "deceived, or had the tendency to deceive, a substantial segment of the relevant purchasing public," and then provides a list of entirely generic potential purchasers that ranges from "prospective customers and partners in the United States"—likely sophisticated OEM purchasers—to "consumer end-users" and "businesses." Compl. ¶¶ 35, 69.

Crucially, YMTC fails to make plausible allegations that any customer (1) was aware of the CTT Publications, or (2) regularly relies on statements from sources like the CTT Publications when making purchasing decisions. The alleged loss of prospective business without alleging facts that customers even *saw* the challenged advertisements is too speculative to form the basis of a Lanham Act claim. *See, e.g., Maffick LLC v. Facebook, Inc.*, 2021 WL 1893074, at *5 (N.D. Cal. May 11, 2021) (dismissing Lanham Act claim where plaintiff "provided no clues about how the alleged deception … might have affected the economic

decisions by … existing and potential customers, whoever they might be") (citations omitted); *see also Avteq*, 2015 WL 13548950, at *9 (dismissing Lanham Act claim for lack of statutory standing where plaintiff had not sufficiently pleaded the allegedly false advertisements were "influential or material" to a "consumer's purchasing decision").

YMTC also has not alleged that any of the alleged deception resulted in sales diverted to DCI (which makes sense because DCI is not a competing chip manufacturer) or any financial benefit to DCI. Nor has YMTC provided any facts showing that the CTT Publications resulted in any actual benefit to Defendant Micron, which was the supposed beneficiary of the purported "disinformation campaign," Compl. ¶¶ 61, 65, of which the 2021 Blog Post and 2022 Report were supposedly a part. *See, e.g.*, *Avteq*, 2015 WL 13548950, at *9 (no Lanham Act statutory standing where "plaintiff has not pleaded the government was induced by defendants' alleged false advertising to offer its business to the defendants instead of the plaintiff").

**Second**, and as detailed in the Micron MTD, YMTC fails to allege how the challenged statements have specifically affected YMTC's sales or business reputation. The Complaint concludes, without any factual allegations, that the challenged statements "directly harmed YMTC's reputation and goodwill within the industry and among consumers, making it more difficult for YMTC to compete effectively in the market, attract and retain customers, secure investments, and recruit and retain employees." Compl. ¶ 71. YMTC's threadbare and conclusory allegations of harm flowing from unspecified customers from both ends of the purchasing spectrum are plainly insufficient, especially given the lack of any allegation that customers saw or relied on the CTT Publications in making purchasing decisions. *See Avteq*, 2015 WL 13548950, at *9; *Maffick*, 2021 WL 1893074, at *5; *see also Barrett v. Atl. Monthly*

*Grp. LLC*, 2024 WL 4119400, at *19 (D.D.C. Sept. 9, 2024) (dismissing claim where "allegation[s] of generalized harm" were "insufficiently speculative").

**C.      This Action Should Be Dismissed for Failure to Plausibly Plead the Elements of a Lanham Act Claim.**

The Complaint alleges false advertising, product disparagement, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), based on direct and contributory liability theories. Compl. pp. 20-28. YMTC cannot plausibly state a Lanham Act claim under either theory. For the reasons articulated in the Micron MTD and below, neither the 2021 Blog Post nor the 2022 Report qualifies as commercial speech and, thus, Plaintiffs' Lanham Act claims fail at the outset. And, as also argued in the Micron MTD and below, none of the five specified statements are false or misleading material statements about Plaintiffs or their products. As the Lanham Act forms the sole basis for the Complaint, the Complaint should be dismissed in its entirety.

**1.      The CTT Publications Are Not "Commercial Advertising or Promotion" and Are Thus Not Actionable Under the Lanham Act.**

It is well-settled law that a claim for Lanham Act false advertising must be based on *commercial* speech. *See* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:71 (5th ed.) ("Courts agree that Lanham Act § 43(a)(1)(B)'s requirement that the challenged statement be 'in commercial advertising or promotion' includes *only* communications that can be characterized as Constitutionally defined 'commercial speech'") (collecting cases) (emphasis added); *Farah v. Esquire Mag., Inc.*, 736 F.3d 528, 541 (D.C. Cir. 2013) ("Every circuit court of appeals to address the scope of [the Lanham Act's] provisions has held that they apply only to commercial speech."). This is true whether or not the speech at issue is, in fact, false. Speech that is false, but non-commercial, is outside the reach of the Act. *Neurotron, Inc. v. Am. Ass'n of*

*Electrodiagnostic Med.*, 189 F. Supp. 2d 271, 275 (D. Md. 2001), *aff'd*, 48 F. App'x 42 (4th Cir. 2002).

Because neither the 2021 Blog Post nor the 2022 Report is "commercial" and/or "advertising or promotions," YMTC's claims fail at the starting gate.

***First,*** courts have interpreted the scope of speech covered by the Lanham Act to include *only* commercial speech "by a defendant who is in commercial competition with the plaintiff." *See, e.g., Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 735 (9th Cir. 1999); *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics,* 859 F. Supp. 1521, 1536 (S.D.N.Y.1994). It is indisputable that DCI is not in "commercial competition" with YMTC, as the Complaint readily acknowledges. Compl. ¶¶ 16, 23. Unlike DCI, Plaintiffs are, by their own description, "developers and manufacturers of 3D NAND flash memories." Compl. ¶¶ 2, 21. DCI does not sell competing products and Plaintiffs cannot plausibly allege that DCI is a commercial competitor of Plaintiffs. *See, e.g.*, *Huntingdon Life Scis., Inc. v. Rokke*, 978 F. Supp. 662, 666-67 (E.D. Va. 1997) (no commercial competition between animal rights organization and animal testing research company, despite the former promoting other companies that did not perform animal testing); *Young Hollywood LLC v. White Ops, Inc.*, 2020 WL 6162795, at *6 (C.D. Cal. Aug. 6, 2020) (no "commercial competition" where plaintiff was a "publisher and distributor of exclusive, premium celebrity and lifestyle content" and Defendant was a "cybersecurity company that provides fraud detection services").

***Second***, and separate from the lack of competition between DCI and YMTC, the Complaint fails to allege "commercial speech." Commercial speech has more broadly been defined as "'expression related *solely* to the economic interests of the speaker and its audience' or 'speech proposing a commercial transaction.'" *United States v. Philip Morris USA Inc.*, 566

F.3d 1095, 1118 (D.C. Cir. 2009) (emphasis added) (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561-62 (1980)). The Complaint's allegations fail to meet either standard. The CTT Publications cannot, under any common-sense interpretation, be considered (1) speech that "propos[es] a commercial transaction," or (2) speech that relates "solely" to the economic interests of its authors.

In *Neurotron,* the court found that a trade journal article that reviewed one of plaintiff Neurotron's medical device products was not commercial speech. *Neurotron*, 189 F. Supp. 2d at 276-77. In doing so, the court looked at the primary purpose of the publication, finding that it was published by "a non-profit organization, whose purpose is not only to lobby and advocate for its members, but also to provide educational services such as informing members of current trends in the industry through [its] publications" and "[n]one of these activities are commercial in nature." *Id.* at 277; *see also Gordon & Breach Sci. Publishers S.A.*, 859 F. Supp. at 1541 (challenged statements were not commercial speech where the articles in which they appeared primarily "examine[d] an issue of considerable public significance").

The same result is warranted here. The Complaint challenges five specific statements in the CTT Publications, all from one source: the China Tech Threat website. Compl. ¶ 66. Two articles from a single website cannot plausibly amount to the "coordinated campaign of false advertising" that YMTC alleges. Compl. ¶ 58. Furthermore, the CTT Publications address a political audience and ask for political action. *See, e.g.*, 2021 Blog Post, Compl. Ex. 3 ("The Trump administration still has time to implement controls to stop the flow of SME…"); 2022 Report, Compl. Ex. 4, at 16 (addressing "American policymakers" and suggesting that the "U.S. can promote … proactive policy…"). Each of the CTT Publications was written in furtherance of *that* purpose, not to "propose a commercial transaction" in any manner, much less to do "no

more" than propose such a transaction. *See, e.g.*, *Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 47 (S.D.N.Y.) (rejecting allegation that a press release was commercial because it was published "with the intent of preventing sales of the plaintiffs' works and of increasing the value of Defendants' artworks at [plaintiffs'] expense" as it was insufficient to allege a "sufficient connection" to a "proposed commercial transaction") (citation modified), *aff'd in part*, 632 F. App'x 637 (2d Cir. 2015). Try as it might, YMTC cannot convert such protected expression into commercial speech.

*Huntingdon Life Sciences* is instructive. There, plaintiff Huntingdon Life Sciences sued People for the Ethical Treatment of Animals ("PETA"), a non-profit lobbying organization, under the Lanham Act for publishing an investigative report about one of Huntingdon's laboratories and issuing press releases attacking its animal testing practices. *Huntingdon Life Scis.*, 978 F. Supp. at 663. Huntingdon argued that PETA's actions were competitive and commercial because PETA was actively promoting other companies (that did not use animal testing) to Huntingdon's potential customers (such as major pharmaceutical corporations). *Id.* at 666. The court dismissed Huntingdon's claims, finding Huntingdon had not adequately alleged that PETA's actions constituted "advertising or promotion" under the Lanham Act because Huntingdon failed to specify an "economic motive" favoring PETA for PETA's publications and, instead, PETA's "intent in publishing the [investigative report] was to disseminate its political message of preventing alleged cruelty to animals." *Id.* Further, under Huntingdon's proposed definition of commercial speech, "every public interest group and consumer reporting service opposing a particular industry or group or commenting upon their product or service would be a competitor for Lanham Act purposes" and the court declined to "expand the Lanham Act to encompass that rationale." *Id.* at 667.

By targeting DCI, YMTC's claims similarly ask for an improper expansion of the Lanham Act. Both the CTT Blog Post and CTT Report are, on their face, forms of public advocacy meant to bring awareness to certain issues. Finding that either publication is commercial speech and that a non-competitor such as DCI could be liable under the Lanham Act for false advertising would open the proverbial floodgates for businesses to challenge their critics without any basis in actual competition.

Even assuming, *arguendo*, that *some aspect* of the challenged statements could be construed as proposing a commercial transaction, the inclusion of one or two sentences that might qualify as "commercial" does not automatically convert otherwise non-commercial speech to commercial speech. *See Neurotron*, 189 F. Supp. 2d at 276 ("While Plaintiff is correct that the article is not removed from commercial speech restrictions simply because it is educational, it does not follow that the article can not [sic] be protected speech if the content is something other than *purely* educational"); *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 795-96 (1988) (Where the main purpose of the work is non-commercial, and the commercial and non-commercial "component parts of a single speech are inextricably intertwined, we cannot parcel out the speech, applying one test to one phrase and another test to another phrase ... Therefore, we apply our test for fully-protected expression.").

This is especially true where, as here, the challenged statements are incidental to the primary purpose of the overall publication. *See, e.g.*, *Oxycal Lab'ys, Inc. v. Jeffers*, 909 F. Supp. 719, 724-25 (S.D. Cal. 1995) (concluding that it was "too much of a stretch" to call a book "commercial speech" just because it contained suggestions of "products to use and buy" and an appendix that described where to buy those products, when it referenced plaintiff's product only three times in 500 pages); *The Monotype Corp. v. Simon & Schuster Inc.,* 2000 WL 1852907, at

*7 (N.D. Ill. Sept. 8, 2000) (A guidebook was not commercial speech where two challenged statements were "buried within the text" of a book: "[T]he court does not believe that two lines of commercial text in a 270-page book can support a conclusion that the Guide is commercial in nature.").

Here, the Complaint cherry-picks one sentence from one blog post—out of hundreds of blog posts on the China Tech Threat website relating to China's threats to the U.S. in the technology space—and four statements from the sixteen-page, single-spaced 2022 Report. The CTT Publications were each clearly non-commercial speech written in furtherance of the public policy focus of the China Tech Threat website and to raise awareness about YMTC's relationship with the Chinese government. The challenged statements—each of which is nonactionable for the additional reasons articulated in the Micron MTD and below—are plainly non-commercial and YMTC does not and cannot convert their character from non-commercial to commercial.

***Third***, DCI's alleged relationship with Micron is insufficient to convert the challenged statement into commercial speech. As an initial matter, YMTC does not and cannot plausibly allege that the CTT Publications were written "for the purpose of influencing consumers to buy [DCI's] goods or services." *See, e.g.*, *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) ("Commercial advertising or promotion" under the Lanham Act is "(1) commercial speech, (2) made for the purpose of influencing consumers to buy defendant's goods or services…") (citation modified); *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1268-69 (10th Cir. 2020) (same); *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (same). YMTC does not plausibly allege that the China Tech Threat website was somehow an advertisement or promotion for DCI's services. DCI is not even referenced in the CTT Publications.

Recognizing the lack of commercial competition with DCI or economic benefit to DCI from the CTT Publications, YMTC instead tries to rely on DCI's relationship with Micron. But—because the CTT Publications are plainly and inherently political speech addressing public policy issues—that allegation does not support a Lanham Act claim against DCI. *See, e.g.*, *Gordon & Breach Sci. Publishers S.A.*, 859 F. Supp. at 1541 (The fact that defendants "stood to benefit" from publishing a scholar's articles in their academic journal or "even that they *intended* to benefit" was "insufficient by itself to turn the articles into commercial speech"); *Exeltis USA Inc. v. First Databank, Inc.*, 520 F. Supp. 3d 1225, 1235 (N.D. Cal. 2021) (holding that defendant's pharmaceutical database was not a "commercial advertising or promotion" because—even if it was funded or directed by plaintiff pharmaceutical manufacturer's competitors—it was "undisputed that the products listed in the database are not Defendant's own"); *see also Peak Health Ctr. v. Dorfman*, 2019 WL 5893188, at *2, *7 (N.D. Cal. Nov. 12, 2019) (where challenged statements appeared in an "investigative report," allegations of a "competitive relationship between [Defendant's employer] and [Plaintiff] and the economic incentives that may arise from that relationship" were insufficient to support "characterization of the article as a commercial advertising or promotion without more").

Furthermore, the China Tech Threat website is available to consumers free of charge and offered without any marketing, advertisements or commercial transactions. But even if it did these things, that would not change the CTT Publications' non-commercial nature. Such actions and any related revenue are entirely insufficient for purposes of alleging the required element under the Lanham Act of a *competitive commercial* purpose. A contrary rule would lead to the impermissible conclusion that "*[a]ny publication* would be deemed an advertisement if the defendant had an interest in encouraging others to purchase it." *Alfasigma USA, Inc. v. First*

*Databank, Inc.*, 525 F. Supp. 3d 1088, 1101 (N.D. Cal. 2021) (emphasis added); *see also Edward Lewis Tobinick, MD*, 848 F.3d at 952 ("Even if [defendant] receives some profit for his quasi-journalistic endeavors as a scientific skeptic, the articles themselves, which never propose a commercial transaction, are not commercial speech"); *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 765 (9th Cir. 2024) (A "simple profit motive to sell copies of a publication or to obtain an incidental economic benefit, without more, does not make something commercial speech. Otherwise, virtually any newspaper, magazine, or book for sale could be considered a commercial publication" (quoting *Ariix v. Nutrisearch Corp.,* 985 F.3d 1107, 1117 (9th Cir. 2021))).

Ultimately, the CTT Publications do not meet any of the factors required to constitute "commercial advertising or promotion" by DCI and are not commercial speech. Thus, YMTC's Lanham Act claims—whether couched as direct or, as addressed in section D, *infra*, contributory—fail as a matter of law. *See Nichols v. Club for Growth Action,* 235 F. Supp. 3d 289, 298 (D.D.C. 2017) (dismissing Lanham Act claims where challenged publication was "political speech expressing a point of view, not commercial speech attempting to promote a good or service."); *Farah v. Esquire Mag., Inc.,* 863 F. Supp. 2d 29, 41 (D.D.C. 2012), *aff'd*, 736 F.3d 528, 539-40 (D.C. Cir. 2013) (dismissing Lanham Act claims stemming from a blog post where "the expression cannot be characterized as commercial speech").

### 2.    The Specified Statements Fail to Meet the Standards for False Advertising and Are Thus Not Actionable Under the Lanham Act.

As detailed in the Micron MTD, YMTC's false-advertising claim also fails because each of the challenged statements is subjective, forward-looking, or otherwise ambiguous and, separately, none is pled with the particularity required under Rule 9(b). *See* Micron MTD, at Section C. In determining whether a statement is actionable, a court examines three factors:

"(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Wexler v. Dorsey & Whitney, LLP*, 2019 WL 5485265, at *6 (E.D.N.Y. Oct. 25, 2019), *aff'd*, 815 F. App'x 618, 622 (2d Cir. 2020).

The four challenged statements from the 2022 Report are so clearly hypotheticals and/or forward-looking statements that they are non-actionable on that basis alone. *Coastal Abstract*, 173 F.3d at 731 (To give rise to liability under the Lanham Act, a challenged statement must make a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact."). The fifth challenged statement, that "YMTC is *associated with* criminal activity, including a Social Security spoofing scam, identity theft, and cyber extortion," Compl. ¶ 80(a) (emphasis added), which appears in the 2021 Blog Post, is similarly non-actionable. The phrase "associated with" does not have a "precise meaning." *Wexler*, 2019 WL 5485265, at *6. It could be interpreted in a number of different ways, including that the activities were being performed by associates of YMTC, not YMTC itself. The statement cannot reasonably be interpreted as a factual statement that YMTC is directly engaged in criminal activities or is a criminal. *Id.* at 7 (rejecting argument that "major spousal scheme" necessarily meant "dishonest plan" where it was "not self-evident that the word 'scheme' … implies deception or impropriety").

Furthermore, viewed in the context of the sixteen-page investigative 2022 Report or the 2021 Blog Post, it is implausible that a reader would isolate these five statements to be anything but the opinions of the authors. *See Wexler*, 2019 WL 5485265, at *8 (finding that "no one could

23

reasonably read the article and [the allegedly false statement] as anything other than the author's opinion" where the statement appeared in a "blog piece on a private firm's website").

> ### D.    The Theory of Contributory Liability Should Be Rejected.

Recognizing the inability to make plausible claims directly against DCI, YMTC asserts a theory of contributory liability. This theory also fails for another independent reason.

As a threshold matter, this circuit has not recognized a theory of contributory liability for Lanham Act false advertising claims. A number of other courts have distinguished contributory liability for trademark infringement from contributory liability for false advertising and declined to recognize the latter. *See, e.g.*, *Purple Innovations, LLC v. Honest Reviews, LLC,* 2017 WL 3172810, *10 (D. Utah July 25, 2017) (noting no authority in the Tenth Circuit recognizing a claim for contributory false advertising and declining to extend the Lanham Act to allow such a claim); *Healthcare Integrity, LLC v. Rehobeth McKinley Christian Health Care Servs., Inc.*, 2022 WL 2802564, at *1 (D.N.M. July 18, 2022) (same). *See also Acad. of Drs. of Audiology v. Int'l Hearing Soc'y*, 237 F. Supp. 3d 644, 666 (E.D. Mich. 2017) (noting that Sixth Circuit has not recognized contributory liability in the false advertising context and declining to do so).

In declining to recognize contributory false advertising claims, courts have explained correctly that unlike a contributory trademark infringement claim, a claim of contributory false advertising would be "inconsistent with *Lexmark*'s proximate cause formulation," which requires that "economic or reputational injury flow[] directly" from the alleged deception. *Telebrands Corp. v. My Pillow, Inc*., 2019 WL 1923410, at *3 (N.D. Ill. Apr. 30, 2019) (declining to recognize contributory false advertising claim and recognizing Seventh Circuit had not yet adopted such a claim). This Court should decline to adopt YMTC's proposed theory of contributory liability for these same reasons.

Even if the Court were to recognize the potential for contributory liability in this context, YMTC's claims against DCI still fail given that the Complaint does not plausibly allege that the challenged statements were commercial speech or actionable false statements.

In order to allege contributory liability for Lanham Act false advertising, a plaintiff must "show that a third party in fact directly engaged in false advertising that injured the plaintiff" and that "the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *Duty Free Ams., Inc. v. Estée Lauder Cos*., 797 F.3d 1248, 1277 (11th Cir. 2015). This requires showing that the defendant "intended to participate in or actually knew about the false advertising." *Id.* (citation modified). For the reasons stated above, the Complaint fails to meet this standard because (i) neither of the CTT Publications constitutes false advertising, and (ii) YMTC has not sufficiently shown that any of its alleged injuries were proximately caused by the challenged statements. As a result, the Complaint fails to show that DCI's actions contributed to "false advertising that injured the plaintiff" and YMTC's contributory liability claim should be dismissed. *See, e.g.*, *Bluegreen Vacations Unlimited, Inc. v. Timeshare Laws. P.A.*, 2023 WL 3198192, at *12 (S.D. Fla. May 2, 2023) (Plaintiff could not succeed on contributory liability claim at summary judgment where the "first element" requiring false advertising was missing); *DNA Sports Performance Lab, Inc. v. Major League Baseball*, 2020 WL 4430793, at *4 (N.D. Cal. Aug. 1, 2020) (dismissing contributory liability claim where injury from allegedly deceptive advertising was insufficiently pled).

Furthermore, even crediting the Complaint's allegations, there is no plausible way DCI's involvement could be interpreted as "knowingly inducing" false *commercial* speech. Unlike other third-party entities that have been subject to contributory liability claims, DCI's purpose is

*not* to develop advertising or marketing campaigns to promote certain products—and YMTC does not plausibly allege otherwise. *Cf. Diamond Resorts Int'l, Inc. v. Reed Hein & Assocs., LLC*, 2019 WL 6310717, at *6 (D. Nev. Nov. 25, 2019) ("in-house marketing agency" liable for contributory infringement where it "created and distributed [defendant's] advertising campaigns online and through radio, television, and print media"); *Gillette Co. v. Wilkinson Sword, Inc*., 795 F. Supp. 662, 663 (S.D.N.Y. 1992) ("An advertising agency is liable for deceptive advertising along with the advertiser when the agency was an active participant in the preparation of the ad and knew or had reason to know that it was false or deceptive."), *vacated on other grounds*, 1992 WL 12000396 (S.D.N.Y. Oct. 28, 1992). Indeed, and as demonstrated above, the CTT Publications address important public policy issues for plainly political purposes and are well within core First Amendment rights.

## V.    **REQUEST FOR JUDICIAL NOTICE**

Defendants respectfully request that the Court take judicial notice of the following:

1.  Department of Commerce, Additions and Revisions to the Entity List and Conforming Removal From the Unverified List, 87 Fed. Reg. 77,505 (Dec. 19, 2022). *See* Ex. 1.

2.  The White House, "Building Resilient Supply Chains, Revitalizing American Manufacturing, and Fostering Broad-Based Growth," June 2021. *See* Ex. 2.

3.  Department of Defense, Entities Identified as Chinese Military Companies Operating in the United States (Jan. 31, 2024). *See* Ex. 3.

The Court may take judicial notice of these documents as evidence of what information was available to the public around the time of Defendants' alleged conduct and Plaintiffs' alleged harm. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010); *see also Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 464 (D.C.

Cir. 2018) (taking judicial notice of "claims about the [plaintiff] company memorialized in various congressional hearings and legislative materials … not for [their] truth, but for [their] existence").

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, YMTC's Complaint should be dismissed under Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure without leave to amend.

August 11, 2025                                                Respectfully submitted,


                                                            */s/ Dale Giali*
                                                            Dale Giali (D.C. Bar #436514)
                                                            *dgiali@kslaw.com*
                                                            Lena T. Colin (*pro hac vice forthcoming*)
                                                            *lcolin@kslaw.com*
                                                            KING & SPALDING LLP
                                                            633 West Fifth Street, Suite 1600
                                                            Los Angeles, California 90071
                                                            Telephone: (213) 443-4355
                                                            Facsimile: (213) 443-4310

                                                            Michael L. Resch (D.C. Bar #481402)
                                                            (*Admission forthcoming*)
                                                            *mresch@kslaw.com*
                                                            KING & SPALDING LLP
                                                            50 California Street, Suite 3300
                                                            San Francisco, California 94111
                                                            Telephone: (415) 318-1200
                                                            Facsimile: (415) 318-1300


                                                            Attorneys for Defendant
                                                            DCI Group AZ, L.L.C.